**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

SARY MUÑOZ MARTÍNEZ,

       Plaintiff,

         v.                      CIVIL NO.: 19-1133 (MEL)

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

**OPINION AND ORDER**

## I.    Procedural and Factual Background

Pending before the court is Ms. Sary Muñoz Martínez's ("Plaintiff") appeal from the decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability benefits under the Social Security Act. ECF No. 18. On July 8, 2014, Plaintiff filed an application for Social Security benefits alleging that on May 5, 2013 ("the onset date"), she became unable to work due to disability. Tr. 81.[1] Prior to the onset date, Plaintiff worked as a material handler and inventory specialist. Tr. 93, 123-24. Plaintiff met the insured status requirements of the Social Security Act through December 31, 2014. Tr. 83. Plaintiff's disability claim was denied on October 19, 2014, and upon reconsideration. Tr. 81.

Thereafter, Plaintiff requested a hearing which was held on May 16, 2017 before Administrative Law Judge Livia Morales ("the ALJ"). Tr. 101-138. On August 15, 2017, the ALJ issued a written decision finding that Plaintiff was not disabled. Tr. 95. Thereafter, Plaintiff requested review of the ALJ's decision. The Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner, subject to judicial

---

[1] "Tr." refers to the transcript of the record of proceedings.

review. Tr. 1-4. Plaintiff filed a complaint on February 11, 2019. ECF No. 1. Both parties have filed supporting memoranda. ECF Nos. 18, 19.

## II. Legal Standard

### A. Standard of Review

Once the Commissioner has rendered a final determination on an application for disability benefits, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing [that decision], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The court's review is limited to determining whether the ALJ employed the proper legal standards and whether his factual findings were founded upon sufficient evidence. Specifically, the court "must examine the record and uphold a final decision of the Commissioner denying benefits, unless the decision is based on a faulty legal thesis or factual error." López-Vargas v. Comm'r of Soc. Sec., 518 F. Supp. 2d 333, 335 (D.P.R. 2007) (citing Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (per curiam)).

Additionally, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). The standard requires "'more than a mere scintilla of evidence but may be somewhat less than a preponderance' of the evidence." Ginsburg v. Richardson, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

While the Commissioner's findings of fact are conclusive when they are supported by substantial evidence, they are "not conclusive when derived by ignoring evidence, misapplying

2

the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam) (citing Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986) (per curiam); Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam)). Moreover, a determination of substantiality must be made based on the record as a whole. See Ortiz, 955 F.2d at 769 (citing Rodríguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). However, "[i]t is the responsibility of the [ALJ] to determine issues of credibility and to draw inferences from the record evidence." Id. Therefore, the court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Rodríguez Pagán v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

**B. Disability under the Social Security Act**

To establish entitlement to disability benefits, a plaintiff bears the burden of proving that he is disabled within the meaning of the Social Security Act. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5, 146–47 (1987). An individual is deemed to be disabled under the Social Security Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Claims for disability benefits are evaluated according to a five-step sequential process. 20 C.F.R. § 404.1520; Barnhart v. Thomas, 540 U.S. 20, 24–25 (2003); Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 804 (1999); Yuckert, 482 U.S. at 140–42. If it is determined that plaintiff is not disabled at any step in the evaluation process, then the analysis will not proceed to the next step. 20 C.F.R. § 404.1520(a)(4). At step one, it is determined whether

plaintiff is working and thus engaged in "substantial gainful activity." 20 C.F.R.

§ 404.1520(a)(4)(i). If he is, then disability benefits are denied. 20 C.F.R. § 404.1520(b). Step

two requires the ALJ to determine whether plaintiff has "a severe medically determinable

physical or mental impairment" or severe combination of impairments. 20 C.F.R.

§ 404.1520(a)(4)(ii). If he does, then the ALJ determines at step three whether plaintiff's

impairment or impairments are equivalent to one of the impairments listed in 20 C.F.R. Part 404,

Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If so, then plaintiff is conclusively found

to be disabled. 20 C.F.R. § 404.1520(d). If not, then the ALJ at step four assesses whether

plaintiff's impairment or impairments prevent him from doing the type of work he has done in

the past. 20 C.F.R. § 404.1520(a)(4)(iv).

In assessing an individual's impairments, the ALJ considers all of the relevant evidence

in the case record to determine the most the individual can do in a work setting despite the

limitations imposed by his mental and physical impairments. 20 C.F.R. § 404.1545(a)(1). This

finding is known as the individual's residual functional capacity ("RFC"). Id. If the ALJ

concludes that plaintiff's impairment or impairments do prevent him from performing his past

relevant work, the analysis proceeds to step five. At this final step, the ALJ evaluates whether

plaintiff's RFC, combined with his age, education, and work experience, allows him to perform

any other work that is available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If the

ALJ determines that there is work in the national economy that plaintiff can perform, then

disability benefits are denied. 20 C.F.R. § 404.1520(g).

### C. The ALJ's Decision

In the case at hand, the ALJ found that Plaintiff met the insured status requirements of the

Social Security Act through December 31, 2014. Tr. 83. Then, at step one of the sequential

evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the relevant period. Id. At step two, the ALJ determined that Plaintiff had the following severe impairments: major depressive disorder, bilateral carpal tunnel syndrome, and degenerative disc disease of the cervical and lumbar spine. Tr. 84. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 85. Next, the ALJ determined that during the relevant period

> [Plaintiff] had the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b), with the following additional limitations: she could lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday. She could push or pull as much as she could carry. She could frequently handle and finger bilaterally, climb ramps and stairs, balance, stoop, kneel, crouch and crawl. She could also occasionally climb ladders, ropes, or scaffolds. She could tolerate no more than frequent exposure to unprotected heights and moving mechanical parts. Work was limited to simple, routine tasks with only simple work-related decisions. She could maintain attention for two hours at one time during an eight-hour workday. She could tolerate no more than frequent interaction with coworkers and the public. She could tolerate no more than frequent changes in the work setting. Lastly, any instances in which she would have been off task could have been accommodated by normal breaks.

Tr. 87. At step four, the ALJ determined that through the date last insured, Plaintiff could not perform her past relevant work as a material handler and inventory specialist. Tr. 93. At step five, the ALJ presented Plaintiff's RFC limitations, as well as her age, education, and work experience to a vocational expert. Tr. 94. The vocational expert testified that an individual with a similar RFC would be able to perform the following representative occupations: inspector and hand packager, assembler of small parts, and final inspector. Tr. 94-95, 125-27. Because there was work in the national economy that Plaintiff could perform, the ALJ concluded that she was not disabled. Tr. 95.

### III.    Legal Analysis

Plaintiff objects to the ALJ's final decision denying her disability benefits on five grounds. First, Plaintiff alleges that the ALJ erred in determining that her alleged fibromyalgia was not a medically determinable impairment. ECF No. 18, at 26-27. Next, Plaintiff claims that her major depressive disorder meets the requirements of Listing 12.04. Id. at 23-24, 27. It is also claimed by Plaintiff that the ALJ's RFC determination is not supported by substantial evidence. Id. at 13-16. Fourth, Plaintiff alleges that the ALJ erred in disregarding her allegations pertaining to her physical functional limitations and pain. Id. at 19-25. Lastly, Plaintiff contends that the ALJ's determination at step five is not supported by substantial evidence. Id. at 16-19.

### A. The ALJ's Step Two Determination

Plaintiff argues that the ALJ erred at step two in the sequential process in evaluating her alleged fibromyalgia. ECF No. 18, at 25-27. "Fibromyalgia is defined as '[a] syndrome of chronic pain of musculoskeletal origin but uncertain cause.'" See Medina Augusto v. Comm'r of Soc. Sec., Civ. No. 14-1431, 2016 WL 782013, at *7 (D.P.R. Feb. 29, 2016) (citations omitted). Under the regulations, a medically determinable impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The Commissioner has promulgated rules regarding the analysis of fibromyalgia claims. In order to establish a medically determinable impairment of fibromyalgia,

> [a] licensed physician (a medical or osteopathic doctor) is the only acceptable medical source who can provide such evidence. We cannot rely upon the physician's diagnosis alone. The evidence must document that the physician reviewed the person's medical history and conducted a physical exam. We will review the physician's treatment notes to see if they are consistent with the diagnosis of FM.

SSR 12-2p, 2012 WL 3104869, at *2 (July 25, 2012). Furthermore, a showing of fibromyalgia requires (1) evidence of a history of widespread pain, (2) at least 11 positive tender points on

physical examination, and (3) evidence that other disorders that could cause the symptoms or signs were excluded. See id. at *2-3. Alternatively, under the 2010 Diagnostic Criteria, a claimant must show (1) a history of widespread pain, (2) repeated manifestations of six or more [fibromyalgia] symptoms especially manifestations of fatigue, cognitive or memory problems, waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome, and (3) evidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded. Id. at *3.

In the case at hand, the ALJ found that Plaintiff's alleged fibromyalgia was not a medically determinable impairment because there is no indication that an acceptable medical source diagnosed this condition based on the accepted diagnostic criteria. Tr. 84. In support of her claim, Plaintiff alleges "what is important is that the plaintiff suffers the severe symptoms associated with [fibromyalgia], and not the diagnosis." ECF No. 18, at 27. Plaintiff contends that she suffers from widespread body pains and that she "underwent multiple tests in order to discard any other source of pain." Id. Plaintiff, however, presents no citations to record evidence in support of her allegations. Plaintiff also has not cited to any evidence showing that she had at least 11 tender points on physical examination or that she had manifestations of 6 or more fibromyalgia symptoms. Thus, the ALJ properly concluded that Plaintiff's alleged fibromyalgia was not a medically determinable impairment.

**B. The ALJ's Step Three Determination**

Plaintiff alleges that her major depressive disorder meets the requirements of Listing 12.04. ECF No. 18, at 23-24, 27. In order to meet Listing 12.04, "the claimant's mental disorder must satisfy the requirements of both paragraphs A and B, or the requirements of both

paragraphs A and C."[2] <u>Martínez-Torres v. Comm'r of Soc. Sec.</u>, Civ. No. 16-1538, 2017 WL 4990560, at *8 (D.P.R. Oct. 31, 2017); 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.04. Paragraph A lists the medical documentation required to characterize major depression disorder. <u>Id</u>. To satisfy paragraph B, an affective disorder must result in at least one extreme or two marked limitations in a broad area of functioning which are: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing themselves. 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.04.

In the case at hand, the ALJ found that Plaintiff's major depressive disorder did not meet the criteria of Paragraph B. Tr. 85. In understanding, remembering, or applying information, the ALJ found that Plaintiff had moderate limitations. Tr. 85. Treating clinical psychologist Dr. Neftalí Rodríguez Olivo ("Dr. Rodríguez") examined Plaintiff in December 2013 and found that her ability to remember, understand, pay attention, and concentrate were considered adequate. Tr. 679. In October 2014, Dr. Rodríguez indicated that Plaintiff had adequate memory, judgment, and insight, as well as adequate attention and concentration. Tr. 665-66. In September 2014, examining consultant psychiatrist Dr. Madeline Santos Carlo ("Dr. Santos") determined that Plaintiff's general knowledge was adequate at the academic and sociocultural levels. Tr. 721. Furthermore, the ALJ noted that Plaintiff reported in her function report that she shopped in stores and managed her own funds. Tr. 86, 175.

Regarding interacting with others, the ALJ found that Plaintiff had moderate limitations. Tr. 86. Plaintiff testified that she had difficulty being out in public and preferred to stay at home. Tr. 86, 117-18. However, the ALJ noted that there was no evidence in the record of explosive

---

[2] The medical criteria used to evaluate claims involving mental disorders have been revised, effective January 17, 2017. <u>Kreischer v. Berryhill</u>, Civ. No. 18-1034, 2019 WL 2177916, at *3 (S.D. Cal. May 20, 2019). The revised criteria apply to ALJ decisions issued after that date. The ALJ decision in the case at bar was issued on August 15, 2017, so the revised criteria applies. Tr. 95.

behavior or other related issues with anger or agitation. Tr. 86. Plaintiff has not cited to any evidence to contradict the ALJ's findings that there was no evidence of explosive behavior. Additionally, the ALJ noted that state agency consultant psychologist Dr. Hugo Román Rivera ("Dr. Román") reviewed the medical record in January 2015 and opined that Plaintiff has no more than moderate limitations in this domain of functioning. Tr. 86, 772.

The ALJ also determined that Plaintiff had only moderate limitations in concentrating, persisting, or maintaining pace. Tr. 86. The ALJ noted that the progress notes of treatment providers during the relevant period are mixed with some reporting that she had adequate concentration and others that she had diminished concentration. For example, progress notes from Dr. Rodríguez continuously reflected that Plaintiff had adequate attention and concentration ability and was oriented to time, person and place.[3] Tr. 666, 670, 672, 674, 676, 679, 707. On the other hand, treating psychiatrist Dr. Katherine Nazario Mercado ("Dr. Nazario") indicated that Plaintiff had diminished concentration on numerous occasions.[4] Tr. 361, 371, 376. Nonetheless, the ALJ noted that Dr. Román reviewed the record in January 2015 and opined that Plaintiff had only moderate limitations in maintaining concentration, persistence, or pace. Tr. 772. See Seavey v. Barnhart, 276 F.3d 1, 10 (1st Cir. 2001) ("the responsibility for weighing conflicting evidence, where reasonable minds could differ as to the outcome, falls on the Commissioner and his designee, the ALJ."); López v. Astrue, Civ. No. 07-1188, 2008 WL 11495169, at *6 (D.P.R. Mar. 31, 2008) ("the ALJ's resolution must be affirmed even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence.").

---

[3] These progress notes correspond to Dr. Rodríguez's treatment of Plaintiff in December 2013, May 2014, June 2014, July 2014, August 2014, September 2014, and October 2014. Furthermore, progress notes from Dr. Rodríguez after the date last insured from June 2015, October 2015, and December 2015 reflect that Plaintiff continued to have adequate attention and concentration ability. Tr. 651, 654, 658.

[4] These progress notes correspond to Dr. Nazario's treatment of Plaintiff in September 2014, October 2014, December 2014.

As for adapting or managing oneself, the ALJ found that Plaintiff had only mild limitations. Tr. 86. The ALJ noted that Plaintiff reported that she did not need reminders to take care of personal needs and that Dr. Rodríguez reported her clothing and hygiene were adequate during the relevant period. Tr. 666, 668, 670, 672, 676, 707.

The ALJ also determined that the Paragraph C criteria were not satisfied. Tr. 87. Paragraph C requires that a claimant have a medically documented history of the depressive disorder for at least a two-year period. Martinez-Torres, 2017 WL 4990560, at *8; 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.04(C). "It also requires that there be evidence of treatment or therapy that diminishes the symptoms and evidence of a minimal capacity to adapt to changes in [the claimant's] environment or to demands that are not part of his daily life." Id. The ALJ noted that although Plaintiff has a medically documented history of major depressive disorder for at least two years and that treatment is ongoing, the record does not reflect that Plaintiff has "an inability to adapt to changes in the environment or demands that are not already part of daily life." Tr. 87. Plaintiff has not cited to any evidence on the record to discredit the ALJ's findings as to Paragraph C. Therefore, there is no reason to overturn the ALJ's step three determination that Plaintiff did not meet Listing 12.04.

### C. The ALJ's RFC Determination

Plaintiff alleges that the ALJ's RFC determination regarding her physical and mental impairments are not supported by substantial evidence. Id. at 13-16. The ALJ is responsible for determining a claimant's RFC based on all the relevant evidence, including a claimant's medical record, the medical opinions, and a claimant's descriptions of his limitations. 20 C.F.R. §§ 404.1545, 404.1546. A claimant's RFC is the most he can do despite limitations from his impairments. Id. The claimant, however, has the burden of providing evidence to establish how

his impairments limit his RFC. 42 U.S.C. § 423(d)(5)(A); Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001).

Regarding Plaintiff's mental impairments, Dr. Rodríguez examined Plaintiff in December 2013 and diagnosed her with "major depression, severe, recurrent." Tr. 680. Dr. Rodríguez, however, found that her ability to remember, understand, pay attention, and concentrate were adequate. Tr. 679. Dr. Rodríguez also found that she had logical, coherent, relevant, and organized thoughts and that her insight and judgment were adequate. Tr. 678-79. The ALJ noted that subsequent progress notes from Dr. Rodríguez indicate that Plaintiff was depressed, but that she had logical, coherent, and relevant thought process and that her memory, judgment, attention and concentration, ability to understand, and insight were adequate.[5] Tr. 665-76

In May 2014, Dr. Nazario examined Plaintiff and found that she had appropriate speech, calm and amiable attitude, normal mood, appropriate affect, logical, relevant, coherent thought processes, fair judgment, average intellect, and no evidence of hallucinations. Tr. 274-76. Dr. Nazario also opined that Plaintiff had diminished insight and concentration but fair memory. Tr. 276. Subsequent progress notes from Dr. Nazario reflect that her findings remained generally the same.[6] Tr. 266-78, 270-72, 300-02, 305-07, 325-27, 330-32, 359-61. The ALJ noted that Dr. Nazario assessed a Global Assessment of Functioning ("GAF") score of 60, indicating no more than moderate symptoms and functional limitations. Tr. 88-89, 279, 283.

The ALJ further noted that examining consultant psychiatrist Dr. Santos evaluated Plaintiff in September 2014 and found that she had adequate speech, intellectual ability, concentration, attention, insight, and judgment. Tr. 89, 296-97. Additionally, Dr. Santos found

---

[5] The progress notes correspond to Dr. Rodríguez's treatment of Plaintiff in May, June, July, August, and October 2014.

[6] The progress notes correspond to Dr. Nazario's treatment of Plaintiff in June, July, August, September, October, and December 2014.

that Plaintiff had logical, relevant, and coherent thought processes, normal thought content, and intact recent and remote memory. Tr. 89, 297. Dr. Santos diagnosed Plaintiff with major depression and assigned her a GAF score of 55, indicating no more than moderate limitations. Tr. 89, 297. Dr. Santos also opined that Plaintiff's "prognosis is guarded and her ability to get involved in an area or job in a persistent way is diminished." Tr. 297. The ALJ assigned partial weight to Dr. Santos' opinion because she was not a treating psychiatrist and lacked the advantage of monitoring Plaintiff's progress over time.[7] Tr. 89. Furthermore, the ALJ found that Dr. Santos' opinion was not consistent with the record evidence and it was undermined by her own mental status examination which showed Plaintiff with adequate attention span and concentration. Tr. 89, 296-97.

In September 2014, state agency consultant psychologist Dr. Adalisse Borges ("Dr. Borges") reviewed the medical record and opined that Plaintiff suffered from affective disorder and had moderate difficulties in activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, and pace. Tr. 92, 752-53. Dr. Román reviewed the medical record in January 2015 and opined that despite moderate limitations in functioning, Plaintiff retained the ability to remember instructions, sustain pace and attention for two-hour intervals when performing simple tasks, interact with others, and adjust to changes. Tr. 92, 776-78. The ALJ reasonably assigned significant weight to Dr. Román's opinion because it was consistent with the evidence of record. Tr. 92, see Rodríguez v. Sec'y of Health & Human Servs., 893 F.2d 401, 403 (1st Cir. 1989); Meléndez Cruz v. Saul, Civ. No. 18-1903, 2020 WL 1951733, at *5 (D.P.R. Apr. 22, 2020) ("state agency consultants are highly qualified medical personnel who are experts in the evaluation of the

---

[7] Dr. Santos was erroneously referred to as a psychologist in the ALJ's decision. Tr. 89. Dr. Santos is an examining psychiatrist. Tr. 293-97.

medical issues involved in disability claims and whose conclusions are to be afforded great weight if they are supported by other evidence in the record."); SSR 96–6p, 1996 WL 374180, at *2-3.

Finally, the ALJ considered Dr. Rodríguez's October 31, 2014 psychological report that she determined was entitled to little weight. Tr. 92-93, 319-23, 1097-1101. The ALJ also assigned little weight to Dr. Rodríguez's March 21, 2017 psychological report that occurred after the date last insured. Tr. 92-93, 1381-85. See Casull v. Comm'r of Soc. Sec., Civ. No. 16-1620, 2017 WL 5462185, at *4 (D.P.R. Nov. 14, 2017) (explaining that the ALJ should still consider "medical evidence after the date last insured if it shed[s] light on whether Plaintiff's impairments were severe prior to date last insured."). In the reports, Dr. Rodríguez opined that Plaintiff had poor attention, poor insight, impulsive judgment, poor ability to relate to others, poor memory, and no ability to persist at work-related tasks. Tr. 319-23, 1097-1101, 1381-85.

"[A]n ALJ should generally give more weight to a treating physician's opinions, because such doctors 'are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [claimant's] medical impairment(s).'" Carstens v. Comm'r of Soc. Sec., Civ. No. 12-1335, 2013 WL 3245224, at *7 (D.P.R. June 26, 2013) (quoting 20 C.F.R. § 404.1527(d)(2)). The ALJ, however, can give less weight to a treating physician's opinion with a showing of good cause: "(1) that they are brief and conclusory, (2) not supported by medically acceptable clinical laboratory diagnostic techniques, or (3) are otherwise unsupported by the record." Carrasco v. Comm'r of Soc. Sec., 528 F. Supp. 2d 17, 25 (D.P.R. 2007); see Santana-Jusino v. Comm'r of Soc. Sec., Civ. No. 15-2686, 2018 WL 4735724, at *3 (D.P.R. Sept. 30, 2018). The ALJ must give good reasons for according less weight to a treating sources' opinion.

Rodríguez v. Colvin, Civ. No. 12-1546, 2014 WL 1309964, at *3 (D.P.R. Mar. 31, 2014); see 20 C.F.R. § 404.1527(c)(2).

The ALJ reasonably assigned little weight to Dr. Rodríguez's psychological reports because they were inconsistent with his own progress notes and other medical evidence in the record. Tr. 92-93. Dr. Rodríguez's progress notes from October 31, 2014 indicate that while Plaintiff had a depressed and anxious mood, she was found with adequate memory, adequate ability to understand, adequate attention and concentration ability, adequate judgment, adequate insight, and she was oriented in all spheres. Tr. 665-66. Dr. Rodríguez's progress notes from November 9, 2014 also reflect that Plaintiff had an adequate attention and concentration ability, adequate memory, adequate judgment and insight, and she was oriented in all spheres. Tr. 704-05. Additionally, the ALJ reasonably concluded that Dr. Rodríguez's opinions were inconsistent with the opinions of Dr. Santos and Dr. Román which showed no more than moderate limitations. Tr. 92-93, 296-97, 776-78.

Plaintiff contends that she is limited to understanding, remembering, and carrying out only simple and repetitive tasks for less than one-third of the day. ECF No. 18, at 15-16. Plaintiff further argues that the record shows that she is only capable of occasional contact with others. Id. However, Plaintiff cites to no record evidence in support of these self-assessed limitations other than her own claims. See 20 C.F.R. § 404.1545(a)(3) ("In general, you are responsible for providing the evidence we will use to make a finding about your [RFC]."). The ALJ properly considered the medical opinions of record regarding Plaintiff's mental impairments, and thus, the mental RFC finding is supported by substantial evidence.

The ALJ's RFC finding regarding Plaintiff's physical limitations is also supported by substantial evidence. The ALJ noted that Plaintiff experienced some problems with her back in

October 2013 when she fell at home. Tr. 90, 216. An x-ray of the lumbar spine was performed in October 2013 that showed minor osteoarthritis with lumbar spasm but no evidence of disc narrowing. Tr. 90, 236. Plaintiff was treated with pain medication and referred for a follow-up examination for the next month. Tr. 90, 216-17. In November 2013, Plaintiff reported to treating general practitioner Dr. Tania Torres ("Dr. Torres") who noted that Plaintiff reported feeling better with treatment and that she had no back pain at present. Tr. 530. Dr. Torres indicated that Plaintiff had a full range of motion in her lumbar spine. Id. A second x-ray of the cervical and lumbar spine performed in September 2014 showed no evidence of fracture or subluxation and preserved intervertebral disc spaces. Tr. 90, 1067. In September 2014, examining neurologist Dr. Olga Ríos Robles ("Dr. Ríos") found that Plaintiff had a normal stride and gait, normal heel and toe walk, full elevation of arms, 4/5 grip strength, 4/5 lower extremity strength, and 4/5 overall strength. Tr. 90, 1071.

In her decision, the ALJ noted that state agency consultant internist Dr. Ramón Ruiz Alonso ("Dr. Ruiz") reviewed the evidence of record in October 2014 and opined that Plaintiff could perform lifting and carrying of up to ten pounds frequently and 20 pounds occasionally, sitting, standing, and walking for up to a total of six hours in an eight-hour day, and frequently balance, stoop, kneel, crouch, crawl, and climb. Tr. 92, 754-55. Dr. Ruiz further opined that Plaintiff was able to frequently grip, grasp, and pinch with her left hand, and had no limitations using her right hand. Tr. 755-56. State agency consultant internist Dr. Pedro Nieves ("Dr. Nieves") reviewed the record at the reconsideration level in January 2015 and concurred with Dr. Ruiz's opinion. Tr. 774-76.

The ALJ also reviewed the evidence regarding Plaintiff's carpal tunnel syndrome and found that Plaintiff retained the ability to perform frequent, but not constant, bilateral fingering

and handling.[8] Tr. 87.  Plaintiff underwent left carpal tunnel release surgery in January 2014 but declined to undergo surgery for her right wrist because she felt that the surgery on her left hand was unsuccessful because she still had pain in her left hand and reported having less strength after surgery. Tr. 90, 199, 348, 350-51, 1125. Plaintiff was referred to physical therapy after her left carpal tunnel release surgery but did not complete the prescribed therapy. Tr. 90, 348, 536. Thus, the ALJ noted that Plaintiff was non-compliant with recommended treatment which undermined her claims of disabling pain and limitations in her wrists. Tr. 90.

The ALJ further noted that Dr. Ríos examined Plaintiff in September 2014 and found only mild signs consistent with hand and wrist entrapment neuropathy. Tr. 90, 1072. Dr. Ríos indicated that Plaintiff had mildly reduced grip strength (4/5) bilaterally and positive Tinel's sign and pain in the left hand. Tr. 90, 1074. Dr. Ríos found some limitation in Plaintiff's ability to grip with her left hand, but no limitation gripping with her right hand. Tr. 1074. Additionally, Dr. Ríos noted that Plaintiff did not have difficulty grasping, pinching, fingering, buttoning a shirt, picking up coins, or writing with her bilateral hands. Tr. 90, 1074. Thus, the ALJ concluded that Plaintiff could not perform constant fingering and handling on account of residual carpal tunnel pain but retained the ability to perform frequent fingering and handling. Tr. 87, 90.

Plaintiff argues that "the ALJ tries to diminish the severity of the carpal tunnel by arguing that the carpal tunnel syndrome in itself is not severe. That is the ALJ is rehashing the medical severity instead of showing that the severe impairments are less than what the plaintiff says. In conflicting arguments, the ALJ tries to defeat her previous acknowledgement that the carpal tunnel is severe." ECF No. 18, at 15. Plaintiff's arguments do not hold water because the severity

---

[8] The term "constantly" is defined as occurring two-thirds or more of the time, "frequently" is defined as anywhere between one-third to two-thirds of the time, and "occasionally" is defined as very little up to one-third of the time. See Social Security Ruling 83–10, 1983 WL 31251, at *6.

analysis at step two is different from the RFC analysis. At step two, the ALJ concluded that Plaintiff's carpal tunnel syndrome constituted a severe impairment. Tr. 84. In assessing Plaintiff's RFC, however, the ALJ found that Plaintiff could perform fingering and handling on a frequent basis. Tr. 87; see Baka v. Berryhill, Civ. No. 17-6114, 2018 WL 6267853, at *8 (N.D. Cal. Nov. 8, 2018) ("the ALJ was not required to include limitations in Plaintiff's residual functional capacity simply because she determined that carpal tunnel syndrome was a severe impairment at step two."); Clarence Bros. v. Astrue, Civ. No. 11-830, 2012 WL 3243232, at *9-10 (M.D. Fla. Aug. 8, 2012) (finding that "the ALJ's conclusion that [the claimant's] mental impairments were severe was not inconsistent with his conclusion that they caused only mild functional limitations."). The ALJ properly considered the evidence regarding Plaintiff's carpal tunnel syndrome and Plaintiff's allegations that the ALJ made conflicting findings are unfounded.

Plaintiff also argues that "the ALJ fails to prove that the severe impairments do not result in marked limitations to the plaintiff's capacity to lift, carry, push, pull, grasp, and hold objects." ECF No. 18, at 16. Plaintiff's claim is untenable as it is the claimant who bears the burden at step three, not the Commissioner, of presenting evidence that she is incapable of performing substantial gainful activity due to her impairments. See Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001) ("The applicant has the burden of production and proof at the first four steps of the process."); 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1545(a)(3) ("In general, you are responsible for providing the evidence we will use to make a finding about your residual functional capacity."). Plaintiff has not cited to any evidence in the record to support her allegations of marked limitations aside from her own claims.

The ALJ appropriately considered the medical evidence and opinions of record in determining Plaintiff's RFC. Thus, the ALJ's RFC determination is supported by substantial evidence. See Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 144 (1st Cir. 1987) ("We must affirm the Secretary's [determination], even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence.").

### D. The ALJ's Rejection of Plaintiff's Allegations Regarding the Severity of her Physical Functional Limitations and Pain

Next, Plaintiff argues that the ALJ erred in finding that her allegations regarding the severity of her physical functional limitations and pain were not consistent with the medical evidence. ECF No. 18, at 19-24; Tr. 88. In her August 2014 function report, Plaintiff alleges that she has constant pain in her entire body, she cannot bend, sit, or stand, she does not provide for her personal care, and she can barely walk because she is in constant pain. Tr. 168-177. Under the regulations, the ALJ must consider a claimant's symptoms in determining whether the claimant is disabled. See 20 C.F.R. § 404.1529(a). First, the ALJ must decide whether a claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged. Id. at § 404.1529(b). Then, the ALJ must evaluate the intensity and persistence of a claimant's symptoms and consider whether the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record documenting a claimant's limited capacity for work. Id. at § 404.1529(c).

In the case at hand, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. Tr. 88. Then, it was determined by the ALJ that Plaintiff's allegations regarding the intensity, persistence, and limiting effects of her symptoms were "not entirely consistent with the medical evidence and other evidence in the record." Tr. 88. In her decision, the ALJ noted an x-ray of the lumbar spine performed in

October 2013 showed minor osteoarthritis with lumbar spasm but no evidence of disc narrowing. Tr. 90, 236. In November 2013, Dr. Torres found full range of motion in Plaintiff's lumbar spine. Tr. 90, 530. In September 2014, Plaintiff presented to Dr. Ríos complaining of diffuse joint pain, hand pain, and lack of strength in either hand. Tr. 1069. Dr. Ríos indicated that Plaintiff had mildly reduced grip strength (4/5) bilaterally and positive Tinel's sign and pain in the left hand. Tr. 90, 1074. Dr. Ríos found some limitation in Plaintiff's ability to grip with her left hand, but no limitation gripping with her right hand. Tr. 1074. Additionally, Dr. Ríos noted that Plaintiff did not have difficulty grasping, pinching, fingering, buttoning a shirt, picking up coins, or writing with her bilateral hands. Tr. 90, 1074.

Dr. Ruiz reviewed the record evidence in October 2014 and opined that Plaintiff could perform lifting and carrying of up to ten pounds frequently and 20 pounds occasionally, sitting, standing, and walking for up to a total of six hours in an eight-hour day, and frequently balance, stoop, kneel, crouch, crawl, and climb. Tr. 92, 754-55. Dr. Ruiz further opined that Plaintiff was able to frequently grip, grasp, and pinch with her left hand, and had no limitations using her right hand. Tr. 755-56. State agency consultant internist Dr. Pedro Nieves ("Dr. Nieves") reviewed the record at the reconsideration level in January 2015 and concurred with Dr. Ruiz's opinion. Tr. 774-76.

The ALJ noted in her decision that there is no indication that back or neck surgery had ever been recommended, no physician had prescribed Plaintiff an assistive device for ambulation, and no indication of significant emergency medical care to deal with her reported musculoskeletal pain. Tr. 91. Plaintiff has not cited to any evidence on the record to discredit the ALJ's findings that she was not prescribed an assistive device for ambulation or underwent significant emergency medical care for her musculoskeletal pain. Additionally, the ALJ noted

that Plaintiff testified that she collected unemployment benefits and spent three months looking for new jobs after her termination from her last job in May 2013 which suggests that she was not as disabled as alleged. Tr. 91, 114-15. Thus, the ALJ's decision to disregard Plaintiff's allegations regarding the severity of her physical functional limitations because they were not consistent with the record evidence is supported by substantial evidence.

Plaintiff also claims that the ALJ erred by not including a thorough discussion of the Avery factors in her decision. ECF No. 18, at 21-23. In evaluating a claimant's subjective complaints of pain, the ALJ must consider the Avery factors. See Vargas-López v. Comm'r of Soc. Sec., 510 F. Supp. 2d 174, 180 (D.P.R. 2007). The Avery factors include:

> (1) The nature, location, onset, duration, frequency, radiation, and intensity of any pain; (2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions); (3) Type, dosage, effectiveness, and adverse side-effects of any pain medication; (4) Treatment, other than medication, for relief of pain; (5) Functional restrictions; and (6) The claimant's daily activities.

 Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 28 (1st Cir. 1986). The ALJ, however, "need not slavishly discuss all factors relevant to analysis of a claimant's credibility and complaints of pain in order to make a supportable credibility finding." Amaral v. Comm'r of Soc. Sec., 797 F. Supp. 2d 154, 162 (D. Mass. 2010) (citations omitted).

In the case at bar, "[a]lthough the ALJ did not mechanically enumerate each factor, [her] opinion and the transcript of the hearing show a full consideration of the factors." González v. Comm'r of Soc. Sec., Civ. No. 14-1669, 2016 WL 1171511, at *3 (D.P.R. Mar. 24, 2016); see Mercado v. Comm'r of Soc. Sec., 767 F. Supp. 2d 278, 285 (D.P.R. 2010) ("a failure to address all of the Avery factors in the rationale of the final decision is cured if the factors are discussed or considered at the administrative hearing."). Regarding the first factor, nature and location of alleged pain, Plaintiff testified at the hearing that she had pain in her hands and lower back. Tr.

119-20. The ALJ also noted in her decision that Plaintiff had presented to physicians with complaints of joint pain, pain in her hands, and back pain. Tr. 88, 90. With regard to the second factor, precipitating and aggravating factors, the ALJ noted that Plaintiff reported that she started experiencing her back pain after she fell at home in October 2013. Tr. 90, 991. Plaintiff reported in her function report that walking causes constant pain. Tr. 177.

The third factor concerning Plaintiff's medication was also considered by the ALJ who specifically asked Plaintiff about her medications at the hearing. Tr. 106. Plaintiff testified that she is taking Klonopin and Zoloft. Tr. 106-07. It was also noted by the ALJ that Plaintiff's back pain was treated with Relafen. Tr. 90, 991.

 Regarding the fourth factor, treatment other than medication, it was noted in the ALJ's decision that Plaintiff did not complete the physical therapy that was prescribed following her carpal tunnel surgery on her left hand. Tr. 91, 1286. The ALJ also considered the fifth factor, functional limitations, as Plaintiff testified at the hearing that sometimes she cannot comb her hair because her fingers stop working and that things fall from her hands. Tr. 119-20. Plaintiff also testified that she can crouch "very little" to tie her shoes and reported in her function report that she cannot lift more than 10 pounds and can only walk for 5 minutes before she has to rest because of the pain. Tr. 120, 177. Regarding the sixth factor, activities of daily living, Plaintiff testified that she tries to get out of bed to do things, but then she lies down again. Tr. 117, 118. It was further testified by Plaintiff that sometimes she spends all day in her room crying and depressed and that sometimes she would not come out of her room to make food or bathe. Tr. 117. Thus, contrary to Plaintiff's argument, the ALJ considered the <u>Avery</u> factors in both the hearing and her decision. <u>See</u> <u>Mercado</u>, 767 F. Supp. 2d at 285.

### E. The ALJ's Determination at Step Five

Plaintiff makes several arguments that the ALJ's determination at step five is not supported by substantial evidence. ECF No. 18, at 16-19. First, Plaintiff alleges that the ALJ erred in presenting a hypothetical question to the vocational expert ("VE") that was based on a RFC for light work because "she does not have the RFC for even the full range of sedentary work." Id. at 19; Tr. 87, 94. As stated earlier, substantial evidence supports the ALJ's RFC determination and Plaintiff cannot rehash her RFC argument at this final step. See Gallant v. Berryhill, Civ. No. 16-308, 2017 WL 2731303, at *7 (D. Me. June 25, 2017).

Plaintiff proceeds to argue that the ALJ's step five finding was not supported by substantial evidence because the ALJ found that Plaintiff's non-exertional limitations eroded her ability to perform light work. ECF No. 18, at 16-18; Tr. 94. Plaintiff argues that if she "does not have the ability to perform all or substantially all the requirements of this level of light work, then she cannot perform the jobs that the ALJ mentions in the rationale." ECF No. 18, at 17. Plaintiff's arguments are unfounded. "In cases where a nonexertional impairment 'significantly affects claimant's ability to perform the full range of jobs' he is otherwise exertionally capable of performing, 'the Secretary must carry his burden of proving the availability of jobs in the national economy by other means' typically through the use of a vocational expert." Ortiz v. Sec'y of Health and Human Servs., 890 F.2d 520, 524 (1st Cir. 1989) (citations omitted). In her decision, the ALJ noted that Plaintiff was not able to perform the full range of jobs that are classified as light work because she had additional non-exertional limitations. Tr. 94. Then, the ALJ properly solicited the opinion of a VE as to whether there were any jobs that are classified as light work that Plaintiff could perform even with her additional non-exertional restrictions. Tr. 94, 125. The vocational expert identified three jobs that a hypothetical individual could perform

with Plaintiff's exertional and non-exertional limitations. Tr. 94-95, 126-27. Thus, the record reflects that the ALJ specifically considered, through the opinion of a VE, the effects of Plaintiff's non-exertional limitations on the jobs available in the national economy that Plaintiff could perform.

Lastly, it is alleged by Plaintiff that the ALJ erred in finding there was a significant number of jobs in the national economy that she can perform because she cannot speak English. ECF No. 18, at 18-19. At the hearing, the ALJ specifically told the VE that Plaintiff cannot speak English. Tr. 123. Then, the ALJ presented Plaintiff's RFC limitations, as well as her age, education, and work experience to the VE. Tr. 125. The VE testified, taking all of these factors into account, that an individual would be able to perform the requirements of the following representative occupations: inspector and hand packager, assembler of small parts, and final inspector. Tr. 94-95, 125-27.

At the hearing, Plaintiff's attorney asked whether the jobs available in the national economy would be reduced because Plaintiff does not speak English. Tr. 132. The VE explained that the number of jobs in the national economy available to a claimant who cannot speak English could be reduced in areas where only English is spoken. Tr. 133-34. Plaintiff contends that the VE's testimony means "there would not be sufficient jobs which the Plaintiff could do," and thus, argues that the ALJ erred in finding there were a significant number of jobs in the national economy that Plaintiff could perform. ECF No. 18, at 18-19.

Plaintiff's argument is untenable. The mere fact that the numbers of jobs available to Plaintiff would be reduced in certain areas where only English is spoken is not indicative that there were not significant jobs existing in the national economy for individuals with a similar RFC. See Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001) ("A claimant is not per se

disabled if he or she is illiterate."); <u>Herrera v. Colvin</u>, Civ. No. 13-1734, 2014 WL 3572227, at

*10 (C.D. Cal. July 21, 2014); <u>Meza v. Astrue</u>, Civ. No. 9-1402, 2011 WL 11499, at *21 (N.D.

Cal. Jan. 4, 2011) (explaining that a finding that illiteracy was a per se disability would be

"illogical and in direct contradiction to Social Security regulations."). The VE resolved this

conflict by clarifying that if a claimant was living in an area where Spanish is spoken then the

claimant would likely be able to perform the job in Spanish. Tr. 133-34.

   In determining whether there is work which exists in the national economy, it does not

matter whether there is work in the immediate area in which Plaintiff lives, there is a specific job

vacancy for Plaintiff, or whether Plaintiff would be hired if she applied for work. 20 C.F.R.

§ 404.1566(a). Further, "Plaintiff cites no authority that a non-English speaking person is

automatically disabled." <u>See</u> <u>Meza</u>, 2011 WL 11499, at *21. "The hypothetical posed to the

vocational expert was based on the ALJ's RFC finding and the ALJ is entitled to rely on the

vocational expert's testimony." <u>Guzmán Pérez v. Comm'r of Soc. Sec.</u>, Civ. No. 18-1209, 2019

WL 5858159, at *5 (D.P.R. Nov. 8, 2019). The ALJ's finding at step five is supported by

substantial evidence.

**IV.**  **Conclusion**

   Based on the foregoing analysis, the court concludes that the decision of the Commissioner

that Plaintiff was not entitled to disability benefits was supported by substantial evidence.

Therefore, the Commissioner's decision is hereby AFFIRMED.

   IT IS SO ORDERED.

In San Juan, Puerto Rico, this 30th day of September, 2020.

          s/Marcos E. López
          U.S. Magistrate Judge